IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

COY CHIROPRACTIC HEALTH CENTER, INC.,
RICHARD COY, DC, and FRANK C. BEMIS &
ASSOCIATES, d/b/a Bemis Chiropractic,
individually and on behalf of others similarly situated,

      **Plaintiffs,**

**v.**

TRAVELERS CASUALTY & SURETY COMPANY and
TRAVELERS INDEMNITY COMPANY,

      **Defendants.**                        **Case No. 06-cv-678-DRH**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

      This matter is before the Court on the motion for remand to state court

brought by Plaintiffs Coy Chiropractic Health Center, Inc., Richard Coy, and Frank

C. Bemis & Associates (Doc. 9).  For the following reasons, the motion is **GRANTED**.

## I. INTRODUCTION

      Plaintiffs filed this action originally in the Circuit Court of the

Third Judicial Circuit, Madison County, Illinois, on February 11, 2005.  They are

parties to preferred provider organization ("PPO") agreements with First Health

Network ("First Health").[1]  Plaintiffs allege that bills submitted by them to Defendants

---

1. Generally speaking, a PPO is, of course, a type of managed care organization in which health care providers contract with an insurer or a third-party administrator to provide health care at reduced rates to the insurer's or administrator's clients in return for benefits like a higher volume of client referrals by the insurer or administrator.  *See Levine v. Central Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1546 (11th Cir. 1996) (noting that medical providers in a PPO agree to accept maximum fees

Travelers Casualty & Surety Company and Travelers Indemnity Company for chiropractic care furnished to Defendants' insureds have been discounted according to the terms of the PPO agreements.  Plaintiffs allege that these discounts are unlawful because Defendants have no PPO agreements with them, and fail to furnish an increased volume of patient referrals to Plaintiffs in return for such discounts. Plaintiffs seek to represent a nationwide class of health care providers injured by Defendants' so-called "silent PPO" practices.

Defendants have removed the case from state court to this Court, asserting federal subject matter jurisdiction on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  Plaintiffs have moved for remand of the case to state court.  Defendants have responded to the motion for remand and have requested oral argument on the motion.  Having reviewed carefully

---

and utilization review and quality control oversight because membership may increase their number of patients); *HCA Health Servs. of Va. v. Metropolitan Life Ins. Co.*, 957 F.2d 120, 122 (4th Cir. 1991) ("A PPO is a group of selected health care providers that agrees to charge lower rates on services in exchange for attracting a greater number of patients."); *FTC v. Tenet Healthcare Corp.*, 17 F. Supp. 2d 937, 940 (E.D. Mo. 1998) ("PPOs provide their participants with incentives to use in-network health care providers by reimbursing a lower percentage of the fees . . . if the individual chooses to use an out-of-network provider."); *Gavin N. Sherwood Chiropractic Clinic, A.P.C. v. Brower*, 838 F. Supp. 274, 275 (M.D. La. 1993) ("A PPO is a contractual agreement between a health care provider and an employer.  Pursuant to such an agreement, the health care provider offers services to the employer's employees at reduced rates.  In turn, the employer encourages its employees, as participants of the plan, to use the preferred providers designated by the PPO."); *Ball Mem'l Hosp., Inc. v Mutual Hosp. Ins., Inc.*, 603 F. Supp. 1077, 1078 (S.D. Ind. 1985) ("The concept of PPO is to provide subscribers with incentives to use those providers of health care services who hold potential for reducing the rate of increase in health care benefit costs.  Two key characteristics in combination differentiate PPO's from other forms of health care coverage:  (1) subscribers are given incentives to use a limited panel of providers, but retain freedom of choice to use other qualified providers, and (2) preferred providers are defined by specific health care cost containment characteristics, such as competitive charges and participation in utilization control programs.").

the submissions of the parties concerning remand, the Court concludes that oral argument on the motion for remand will not be helpful in this case. The motion for remand is ripe for decision and the Court now is prepared to rule.

## II. DISCUSSION

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, federal courts have jurisdiction in diversity over class actions and putative class actions involving one hundred or more class members in which any member of the plaintiff class is a citizen of a state different from that of any defendant, and in which, after aggregating all claims of class members, an amount in excess of $5 million, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(2)(A), (d)(5)(B), (d)(6), (d)(8); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 676-77 (7th Cir. 2006); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 758 (7th Cir. 2006); *Kitson v. Bank of Edwardsville*, Civil No. 06-528-GPM, 2006 WL 3392752, at *2 (S.D. Ill. Nov. 22, 2006).[2]

---

2. The citizenship of a natural person for purposes of diversity jurisdiction under CAFA is determined by that person's domicile, that is, the place where the person is physically present with the intent to remain there. *See Kitson*, 2006 WL 3392752, at *6. With respect to business organizations, the citizenship of both corporations and unincorporated associations is determined by (1) the state under the law of which they are organized and (2) the state where they maintain their principal place of business. *See* 28 U.S.C. § 1332(c)(1), (d)(10).

Class actions filed in state court in which the statutory prerequisites for federal subject matter jurisdiction under CAFA are met may be removed to federal court. *See* 28 U.S.C. § 1453(b); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006); *Bemis v. Allied Prop. & Cas. Ins. Co.*, No. 05-CV-751-DRH, 2006 WL 1064067, at *2 (S.D. Ill. Apr. 20, 2006). A removing defendant has the burden of establishing that the prerequisites for the exercise of federal jurisdiction on removal under CAFA are satisfied and doubts as to the propriety of such removal must be resolved in favor of remand to state court. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005); *In re Audi*, No. 05-CV-4698, 2006 WL 1543752, at *1 & n.3 (N.D. Ill. June 1, 2006); *Orbitz, LLC v. Worldspan, L.P.*, 425 F. Supp. 2d 929, 931 (N.D. Ill. 2006); *Fiore v. First Am. Title Ins. Co.*, No. 05-CV-474-DRH, 2005 WL 3434074, at *2 (S.D. Ill. Dec. 13, 2005).

In this instance, it is undisputed that this is a class action involving one hundred or more class members in which the requisite minimal diversity of citizenship exists. Defendants are Connecticut citizens and Plaintiffs are Illinois citizens. *See* Doc. 2 ¶ 10. Similarly, the record shows that an amount in excess of $5 million, exclusive of interest and costs, is in dispute. *See id.*, Ex. A pt. 1 (Affidavit of Lisa M. Lilly) ¶ 6. The principal issue in contention here is whether this action was commenced on or after CAFA's effective date. CAFA "is not retroactive and therefore only applies to class actions which are 'commenced on or after the date of enactment' of the statute, February 18, 2005." *Schillinger v. 360Networks USA, Inc.*, Civil No. 06-CV-138-GPM, 2006 WL 1388876, at *2 (S.D.

Ill. May 18, 2006) (quoting Pub. L. 109-2, § 9, 119 Stat. 4). *See also Miller v. Hypoguard USA, Inc.*, No. 05-CV-186-DRH, 2006 WL 1285343, at *1 n.2 (S.D. Ill. May 8, 2006). The question of when a lawsuit is initially commenced for purposes of removal under CAFA is determined by the law of the state where a class action initially was filed. *See Pfizer, Inc. v. Lott*, 417 F.3d 725, 726 (7th Cir. 2005); *In re General Motors Corp. Dex-Cool*, No. Civ. MDL-03-1562-GPM, Civ. 05-10008-GPM, 2006 WL 2818773, at *2 (S.D. Ill. Sept. 27, 2006). Under the law of Illinois, where this action initially was filed, "[e]very action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." 735 ILCS 5/2-201(a). *See also Del Raine v. Carlson*, 826 F.2d 698, 707 (7th Cir. 1987) (citing *Lawrence v. Williamson Ford, Inc.*, 300 N.E.2d 636, 640 (Ill. App. Ct. 1973)) (under Illinois law, "suit is commenced by filing the complaint[.]"). Accordingly, this action was commenced for CAFA purposes on February 11, 2005, when, as noted, it was filed originally in the Madison County circuit court. *See* Doc. 2, Ex. B pt. 1 (Class Action Complaint).

Defendants contend that this action in fact was commenced after the effective date of CAFA because on August 28, 2006, Plaintiffs served on them a proposed amended complaint. *See* Doc. 2, Ex. A pt. 1 (First Amended Class Action Complaint). In some instances an amendment of a class-action complaint in state court after the effective date of CAFA may operate to commence (or perhaps more properly, recommence) a class action for purposes of removal to federal court, even though the action originally was filed before the effective date of CAFA.

The United States Court of Appeals for the Seventh Circuit has held that for purposes of removal under CAFA, "a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes." *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005). *See also Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005) (noting that "a defendant added after February 18 [2005] could remove because suit against it would have been commenced after the effective date" of CAFA) (emphasis omitted).

The accepted test of whether an amendment of a class-action complaint after the effective date of CAFA "commences" an action so as to permit removal under the statute is whether the amendment "relates back" to the filing date of the original complaint: if it does, then the case is not removable, but if it does not, the case is subject to removal under CAFA. *See Knudsen*, 411 F.3d at 807; *Schillinger*, 2006 WL 1388876, at *3; *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, No. CIVMDL-03-1562GPM, Civ. 05-10007-GPM., 2006 WL 644793, at *2 (S.D. Ill. Mar. 9, 2006). In general, courts apply the law of the state where a class action was filed to determine whether an amendment of a class-action complaint after the effective date of CAFA has commenced an action for purposes of removal under the statute. *See Santamarina*, 466 F.3d at 573-74; *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787-88 (7th Cir. 2006). *See also Plubell v. Merck & Co.*, 434 F.3d 1070, 1071-74

(8th Cir. 2006); *Cuesta v. Ford Motor Co.*, No. CIV-06-61-S, 2006 WL 1207608, at

**3-4 (E.D. Okla. May 1, 2006); *Whitehead v. Nautilus Group, Inc.*, 428 F. Supp. 2d

923, 926-28 (W.D. Ark. 2006); *Adams v. Insurance Co. of N. Am.*, 426 F. Supp. 2d

356, 372-77 (S.D.W.Va. 2006).   As the Seventh Circuit Court of Appeals explained

recently, "[a]n amended complaint kicks off a new action [for CAFA purposes] only

if, under the procedural law of the state in which the suit was filed, it does not 'relate

back' to the original complaint."  *Santamarina*, 466 F.3d at 573.  *See also Prime

Care of N.E. Kan., LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1286 (10th Cir. 2006)

(noting that courts "generally agree that whether an amendment is distinct enough

to give rise to a new commencement date [under CAFA] is properly

gauged by the forum state's law governing the relation-back of pleading

amendments.") (collecting cases).

   Relation back of amendments under Illinois law is governed by 735

ILCS 5/2-616, which provides, in pertinent part,

> The cause of action, cross claim or defense set up in any
> amended pleading shall not be barred by lapse of time under any
> statute or contract prescribing or limiting the time within which
> an action may be brought or right asserted, if the time prescribed
> or limited had not expired when the original pleading was filed,
> and if it shall appear from the original and amended pleadings
> that the cause of action asserted, or the defense or cross claim
> interposed in the amended pleading grew out of the same
> transaction or occurrence set up in the original pleading, even
> though the original pleading was defective in that it failed to
> allege the performance of some act or the existence of some fact
> or some other matter which is a necessary condition precedent
> to the right of recovery or defense asserted, if the condition
> precedent has in fact been performed, and for the purpose of
> preserving the cause of action, cross claim or defense set up in

the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended.

735 ILCS 5/2-616(b).   The usual test of relation back is the so-called "same transaction or occurrence" rule, whereby an amendment to a pleading relates back to the filing date of the original pleading if "the matter introduced by the amended pleading . . . grew out of the same transaction or occurrence set up in the original pleading" so that  there is an "identity of transaction or occurrence" as between the two pleadings. *Zeh v. Wheeler*, 489 N.E.2d 1342, 1345 (Ill. 1986). *See also Onsite Eng'g & Mgmt., Inc. v. Illinois Tool Works, Inc.*, 744 N.E.2d 928, 933-34 (Ill. App. Ct. 2001) ("In determining whether the relation back doctrine should be applied, we focus on the identity of the transaction or occurrence on which the causes of action asserted in the original and amended pleading are based.").

The rationale underlying the same transaction or occurrence rule is that "a defendant will not be prejudiced" by an amended pleading "so long as his attention has been directed to the facts which form the basis of the claim lodged against him" in the amended pleading by the initial pleading in a case. *Bailey v. Petroff*, 525 N.E.2d 278, 282 (Ill. App. Ct. 1988).  As the Supreme Court of Illinois explained in *Zeh*, the same transaction or occurrence rule "is bottomed on the belief that if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." 489 N.E.2d at 1348.  *See also Flynn v. Szwed*, 586 N.E.2d 539, 543 (Ill. App. Ct. 1991) (quoting *Seibert v. Cahill*, 527 N.E.2d 1042, 1044 (Ill. App. Ct.

1988)) ("[A]n amended complaint relates back . . . when the original complaint supplies defendant with 'all the information necessary to prepare the defense to the subsequently asserted claim.'").  Thus, the same transaction or occurrence rule does not require identity of legal theories as between an original pleading and an amended pleading, nor does it require that the evidence necessary to prove the claims contained in each pleading be exactly the same.  Instead, whether the claim for relief set up in an amended pleading relates back to that asserted in an original pleading must be "viewed in . . . factual terms . . . and considered . . . coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; . . . and regardless of the variations in the evidence needed to support the theories or rights.'" *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 892 (Ill. 1998).  *See also Sompolski v. Miller*, 608 N.E.2d 54, 57 (Ill. App. Ct. 1992) ("The right to amend does not depend on whether the cause of action set out in the amendment is substantially the same as that stated in the original pleading[.]").

Consequently, new theories of relief are part of the same transaction or occurrence if they arise from a single group of operative facts "even if there is not a substantial overlap of evidence[.]" *River Park, Inc.*, 703 N.E.2d at 893.  Put another way, "[t]he addition of new theories of recovery does not prevent relation back of an amendment where . . . the amendment and the original pleading are premised on the same basic . . . conduct and the same resulting injuries." *Longust v. Peabody Coal Co.*, 502 N.E.2d 1096, 1097 (Ill. App. Ct. 1986).  "As long as the defendant has been

apprised of the essential information necessary to prepare a defense, an amended complaint will be deemed to relate back to the original pleading . . . and a defendant is not prejudiced by allowance of an amendment 'so long as his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him.'"  *Sompolski*, 608 N.E.2d at 57 (quoting *Simmons v. Hendricks*, 207 N.E.2d 440, 443 (Ill. 1965)).  Further, Illinois law favors liberal relation back of amendments.  *See Zeh*, 489 N.E.2d at 1348 (noting that "the modern trend in Illinois" is toward "liberal allowance of amendments to pleadings after the running of the statute of limitations," consistent with "the modern approach to pleading" favoring "the resolution of litigation on the merits and the avoidance of elevating questions of form over questions of substance"); *Maliszewski v. Human Rights Comm'n*, 646 N.E.2d 625, 627 (Ill. App. Ct. 1995) ("The courts have liberally construed [735 ILCS 5/2-616] and its predecessors as a remedial statute, noting that its ends are served and justice is done when a cause is heard on its merits, while assuring that a defendant was sufficiently apprised of the incident so that defense was realistically possible and no prejudice would ensue.") (collecting cases).[3]

--------

3.    The Court notes that although, as discussed, the issue of relation back for purposes of commencement under CAFA is governed by state law, federal law governing relation back of amendments is substantially the same as Illinois law on this matter.  *See Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) ("Generally, an amended complaint in which the plaintiff merely adds legal conclusions or changes the theory of recovery will relate back to the filing of the original complaint if . . . the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading."); *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996) ("In general, relation back is permitted under Rule 15(c)(2) [of the Federal Rules of Civil Procedure] where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading."); *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402, 410 (7th Cir. 1989) (holding that an amended complaint alleging violations of federal anti-discrimination law related back to the filing date

Plaintiffs argue that the Court need not reach the question of whether their amended complaint relates back to the filing date of their original complaint because there is no evidence that the state court granted Plaintiffs leave to amend their complaint before this case was removed.  Under 28 U.S.C. § 1446, of course, a case that is not removable at the outset may be removed within thirty days of a defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b).  In general, a mere request for leave to amend a complaint does not trigger a right to remove under Section 1446(b); rather, the event creating a right of removal is a state-court order authorizing a plaintiff to file a complaint showing that a case is within federal subject matter jurisdiction.  *See Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998) (removal was authorized not by the filing in state court of a motion to amend a complaint to join federal claims but by an order granting the motion; Section 1446(b) speaks of an "amended pleading, motion, order or other paper . . . . that discloses that the case is or has become removable, not that it may sometime in the future become removable if something happens, [such as] the granting of a motion by the state judge."); *Vidmar*

---

of the plaintiff's original complaint, which alleged violations of a state anti-discrimination statute based upon the same facts and conduct); *Staren v. American Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems.  To this end, amendments pursuant to Rule 15(c) should be freely allowed.").  *Accord Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 309-10 (3d Cir. 2004) (holding that claims in a second amended restated complaint alleging that a union breached its duty of fair representation related back to the original complaint, where the amendment merely expounded upon and further detailed the factual scenario and breach claims that were roughly sketched in the original complaint).

*Buick Co. v. General Motors Corp.*, 624 F. Supp. 704, 706 (N.D. Ill. 1985) (the right to remove was triggered not by a motion but by an order granting the motion: "[T]he removal statute contemplates situations in which defendants wait for enabling state court orders before removing to federal court."). *See also Desmond v. BankAmerica Corp.*, 120 F. Supp. 2d 1201, 1204 (N.D. Cal. 2000) (holding that a plaintiff's "intent to amend a complaint" did not establish federal jurisdiction and that "removal in this case . . . will become available only upon the filing of an amended complaint."); *Hibbs v. Consolidation Coal Co.*, 842 F. Supp. 215, 217 (N.D.W.Va. 1994) (the "majority view" is that a case becomes removable only when a plaintiff is granted leave to file an amended complaint showing that the prerequisites of federal jurisdiction are satisfied, not when the plaintiff requests leave to amend) (collecting cases). *But cf. F.W. Myers & Co. v. World Projects Int'l, Inc.*, No. 96-CV-0763, 1996 WL 550135, at *3 (N.D.N.Y. Sept. 19, 1996) (a case was removable in federal diversity jurisdiction when the plaintiff moved for leave to amend the complaint to assert a demand for damages in excess of the jurisdictional minimum amount).

Plaintiffs' point is well taken. It is axiomatic that Congress is assumed to act with the knowledge of existing law and interpretations when it enacts new legislation. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 792 (1998) (noting the "presumption that Congress was aware of [prior] judicial interpretations [of a statute] and, in effect, adopted them"); *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 699 (1979)) (in interpreting new legislation enacted by Congress, "it is not only appropriate but also

realistic to presume that Congress was thoroughly familiar with [federal court] precedents . . . and that it expect[s] its enactment[s] to be interpreted in conformity with them."); *Martin v. Luther*, 689 F.2d 109, 115 (7th Cir. 1982) ("Congress is presumed to know the law.").  In the particular context of CAFA, this means that the statute is presumed to have been enacted with knowledge of existing law and judicial decisions and does not overrule such law and decisions except to the extent it does so explicitly.  *See Brill*, 427 F.3d at 448 (CAFA does not repeal the well settled rule that a defendant seeking removal to federal court has the burden of proving the existence of federal subject matter jurisdiction); *Kitson*, 2006 WL 3392752, at **13-17 (interpreting the term "primary defendants" as used in the "home-state controversy" exception to CAFA jurisdiction set out at 28 U.S.C. § 1332(d)(4)(B) in light of traditional judicial understanding of the term); *In re General Motors Corp. Dex-Cool*, 2006 WL 2818773, at *5 (CAFA must be construed consistently with the rule that a notice of removal may not be amended more than thirty days after the time for removal to include new allegations of federal jurisdiction not asserted in the original notice).

        The principle that a statute must be construed consistently with existing law applies especially cogently to CAFA, in view of the fact that the express purpose of the statute was to repeal specific federal common-law principles governing the exercise of diversity jurisdiction in class actions.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 & n.2 (7th Cir. 2006) (noting that CAFA repeals the traditional rule against aggregating the claims of a proposed class to satisfy the jurisdictional

minimum amount for diversity purposes); *Hart*, 457 F.3d at 676-77 (with respect to class actions CAFA repeals the complete diversity rule, which requires that all plaintiffs in an action be of different citizenship than all defendants). "[G]iven the care taken in CAFA to reverse *certain* established principles but not others, the usual presumption that Congress legislates against an understanding of pertinent legal principles has particular force." *Kitson*, 2006 WL 3392752, at *14 (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006)) (emphasis in original). In view of the traditional rule that a mere request to amend a complaint does not create a right to remove, ordinarily the Court would resolve doubts concerning whether Plaintiffs actually were granted leave to amend their complaint in state court before removal in favor of remand. *See Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1018 (S.D. Ill. 2007) (deficiencies in the record of a removed case must be resolved against removal); *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1000-01 (S.D. Ill. 2007) (same). On the other hand, the Court notes some authority in support of the view that, for purposes of commencement of an action such as to permit removal pursuant to CAFA, the relevant date under Illinois law is the date of a request to amend a complaint, not the date such a request is granted. *See Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 774-79 (S.D. Ill. 2006). More to the point, it is clear that the amendment to Plaintiffs' complaint at issue here relates back to the pre-CAFA filing date of Plaintiffs' initial pleading and therefore did not commence this action after the effective date of CAFA so as to permit removal under

the statute.

The original complaint filed by Plaintiffs before the effective date of CAFA asserted claims based on alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-505/12 ("ICFA") and similar statutes in other states, unjust enrichment, and civil conspiracy. *See* Doc. 2, Ex. B pt. 1. Plaintiffs' amended complaint adds a claim for breach of contract, and attaches as exhibits to the complaint evidence concerning Plaintiffs' PPO contracts with First Health. *See id.*, Ex. A pts. 1-2. Plaintiffs' amended complaint plainly relates back to the filing date of Plaintiffs' original complaint. Plaintiffs' initial pleading clearly alleged that Plaintiffs have entered PPO contracts with First Health under which, in return for accepting discounted payments for health care services, they are entitled to a higher volume of patient referrals, including insureds of Defendants. *See id.*, Ex. B pt. 1 ¶¶ 13-29. In particular, Plaintiffs' original complaint alleged:

> Plaintiffs entered into preferred provider agreements with First Health . . . for the purpose of increasing the volume of insured persons, covered claimants and other beneficiaries seeking services from Plaintiffs through referrals, channeling and steerage.

> \* \* \* \*

> First Health and other PPOs in turn enter[ed] into agreements with payors, including Defendants, pursuant to which the payors would have access to the PPO networks and their discounts in return for providing referrals, channeling and steerage to PPO network providers. Under these provider agreements, the provider networks and their affiliated payors have an obligation to provide meaningful referrals, channeling and steerage to

network providers to justify the discounted rates the providers have agreed to accept. The increased volume of patients resulting from such referrals, channeling and steerage is the *sine qua non* and essential benefit of the PPO from the providers' standpoint.

\* \* \* \*

Frustrating the legitimate expectations of Plaintiffs and other Class members, Defendants did not fulfill their obligations under the agreements and did not take the requisite steps to provide referrals, channeling and steerage. Instead, Defendants paid Plaintiffs and other class members at discounted rates, without providing referrals, channeling or steerage as contemplated by the provider agreements. As a result of [their] misconduct, Defendants increased their profits, while Plaintiffs and other Class members were injured by being paid discounted fees for their services without obtaining the expected benefits of referrals, channeling and steerage. The result was that the Defendants exploited . . . First Health and other PPO networks as Silent PPOs for purposes of Plaintiffs and other Class members.

*Id.*, Ex. B pt. 1 ¶ 14, ¶ 15, ¶ 17.

As is clear from the above-quoted paragraphs of Plaintiffs' original complaint, all of the facts underlying the claim for breach of contract asserted in Plaintiffs' amended complaint were alleged in their original pleading and thus relate back to the date of the original pleading. As discussed, in determining whether an amended pleading relates back, "what is important is defendant's attention be *directed to the facts* within the prescribed time" by an earlier pleading. *Pearl v. Waibel*, 688 N.E.2d 336, 341 (Ill. App. Ct. 1997) (emphasis in original). *See also Zeh*, 489 N.E.2d at 1345 (relation back should be permitted so long as a defendant's attention "was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him" in an amended pleading). Defendants cannot assert with any seriousness that Plaintiffs' original complaint failed to notify

them that, as is alleged in Plaintiffs' amended complaint, Plaintiffs have entered PPO

agreements with First Health and that these agreements, in Plaintiffs' view, impose

on Defendants a legal duty not to take PPO discounts without furnishing in return

an increased volume of patient referrals.  *See Doherty v. Cummins-Allison Corp.*,

628 N.E.2d 731, 734 (Ill. App. Ct. 1993) (relation back should be allowed liberally

where the allegations of a plaintiff's original pleading afforded a defendant "a fair

opportunity to investigate the circumstances upon which liability against him is

predicated" in an amended pleading); *Digby v. Chicago Park Dist.*, 608 N.E.2d 116,

118 (Ill. App. Ct. 1992) (relation back is proper where an earlier pleading "provided

defendant with all of the necessary information to prepare his defense to the

subsequently asserted claim" in an amended pleading).  The mere fact that Plaintiffs

have elected in their amended complaint to cast the facts alleged in their original

complaint as a claim for breach of contract is not an obstacle, of course, to relation

back.  *See Steinberg v. Dunseth*, 658 N.E.2d 1239, 1246 (Ill. App. Ct. 1995) (finding

that the addition of vicarious liability counts that were similar to direct liability

counts asserted in an original complaint related back, and holding that for purposes

of allowing relation back, "the fact there is a change in theory is not significant."); 

*Yette v. Casey's Gen. Stores, Inc.*, 635 N.E.2d 1091, 1093 (Ill. App. Ct. 1994) ("[T]he

relation back statute contemplates that an amended pleading may set forth a

new cause of action or theory of liability which arises out of the same transaction or

occurrence.").

   The Court notes that Plaintiffs' claims that Defendants breached

contractual duties to them do not sit particularly well with Plaintiffs' claims that Defendants' alleged misconduct constitutes statutory consumer fraud.  It is well settled that ICFA is not a tool for vindicating claims on a contract.  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."); *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196-97 (Ill. App. Ct. 2005) (a mortgagor's claim that a mortgagee engaged in an unfair or deceptive act or practice by failing "promptly" to return the mortgagor's escrow funds as required by a mortgage was not a viable claim under ICFA but rather was an ordinary claim for breach of contract); *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 757-58 (Ill. App. Ct. 2004) (insureds who brought a breach of contract claim against an insurance company for refusal to tender the amount allegedly due under a policy for physical damage to an automobile could not bring a separate claim under ICFA); *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000) ("[I]t is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.").  *Accord Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.").[4]

---

4. The Court notes also that Plaintiffs are not "consumers" within the meaning of ICFA.  For ICFA purposes, "[t]he term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."  815 ILCS 505/1(e).  Of course, this does not necessarily mean that Plaintiffs cannot establish standing to sue under ICFA, provided their claims involve trade

Plaintiffs' claims for breach of contract also are at odds, obviously, with their claims for unjust enrichment. Where the subject matter of a suit is governed by a contract, it is axiomatic that there can be no recovery on the basis of a quasi-contractual theory like unjust enrichment. *See Murray v. Abt Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994) ("Illinois does not permit recovery on a theory of quasi-contract when a real contract governs the parties' relations."); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988) (under Illinois law, "[i]f the parties enter into an agreement, they choose to be bound by its terms . . . . [A]n action sounding in quasi-contract will not lie."); *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, at *14 (N.D. Ill. Aug. 1, 1997) (quoting *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 151 (Ill. App. Ct. 1995)) ("Since the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application."); *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.").

Of course, federal procedural rules, which govern all actions removed to federal court as if they were commenced there, *see Crook v. WMC Mortgage Corp.*, No. 06-cv-535-JPG, 2006 WL 2873439, at *1 (S.D. Ill. Oct. 5, 2006), permit

---

practices addressed to the market generally or otherwise implicate consumer protection concerns. *See ASI Acquisition, LLC v. Rayman*, No. 01 C 165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002); *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 40-41 (Ill. App. Ct. 1989). Naturally, the Court expresses no opinion as to whether Plaintiffs' claims possess the requisite "consumer nexus" for purposes of ICFA standing.

Plaintiffs to plead alternative and inconsistent theories of recovery. *See Allied Vision Group, Inc. v. RLI Prof'l Techs., Inc.*, 916 F. Supp. 778, 782 (N.D. Ill. 1996) (citing Fed. R. Civ. P. 8(e)(2)) (at the pleading stage a plaintiff may assert alternative and inconsistent claims for relief based on contractual and quasi-contractual theories of recovery); *Quadion Corp. v. Mache*, 738 F. Supp. 270, 278 (N.D. Ill. 1990) (same). In any event, the Court has no jurisdiction to address Plaintiffs' claims on their merits. The amendment of Plaintiffs' complaint merely added an additional legal theory sounding in contract on the basis of facts clearly alleged in Plaintiffs' original, pre-CAFA complaint. The amendment added no new parties, did not affect the size of the class, and has done nothing to enlarge the scope of Defendants' potential liability. Whatever the merits of Plaintiffs' contractual theory of recovery, it is based on the facts alleged in Plaintiffs' original complaint and thus relates back to the filing date of the original complaint, so that this action was not commenced after the effective date of CAFA and is not removable under the statute. *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005) (quoting *Boatmen's Nat'l Bank of Belleville v. Direct Lines, Inc.*, 656 N.E.2d 1101, 1107 (Ill. 1995)) (holding that an amendment to a complaint did not commence an action for purposes of removal under CAFA where the original complaint "furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted in the amended complaint."). Finally, Defendants do not argue, and the Court discerns no evidence to show, that any named Plaintiff has a claim in this case worth more than $75,000, exclusive of interest and costs, and therefore the Court does not

have jurisdiction in diversity under pre-CAFA law.  *See Buller Trucking Co.*, 461 F. Supp. 2d at 779-81; *In re General Motors Corp. Dex-Cool*, 2006 WL 2818773, at **6-7.  The Court concludes that this action is due to be remanded to state court.

### III. <u>CONCLUSION</u>

Plaintiffs' motion for remand to state court (Doc. 9) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c) this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of subject matter jurisdiction effective July 30, 2007.  The Court in its discretion declines to award Plaintiffs costs and expenses, including attorney fees, pursuant to Section 1447(c).

**IT IS SO ORDERED.**

Signed this 20th day of July, 2007.

/s/        David  RHerndon
**United States District Judge**